## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | |
|---|---|
| **CARL WELCH** § | |
| Plaintiff, § | |
| v. § | **CIVIL ACTION NO. 1:24-cv-21** |
| § | |
| **CREATIVE SOLUTIONS IN** § | |
| **HEALTHCARE, INC., DE LEON I** § | **JURY TRIAL DEMAND** |
| **ENTERPRISES LLC, AND DELEON** § | |
| **NURSING AND REHABILITATION LP** § | |
| Defendants. § | |

## ORIGINAL COMPLAINT

Plaintiff Carl Welch brings this action for damages and other legal and equitable relief from Defendants, Creative Solutions in Healthcare, Inc. ("CSNHC"), De Leon I Enterprises LLC, and Deleon Nursing and Rehabilitation LP ("DeLeon"), (collectively "Defendants"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, Chapter 21 of the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("Texas Labor Code"), and any other causes of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. Mr. Welch was terminated in retaliation for reporting to management that his subordinate was being harassed and discriminated against because of his sexual orientation. This discrimination occurred with the full knowledge and consent of Defendants' Human Resources department. Accordingly, Mr. Welch brings the present suit.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this

Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.  The Court's supplemental jurisdiction is invoked under 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

4.  Venue is proper in this Court as the unlawful employment practices occurred in this judicial district.

## PARTIES

5.  Plaintiff Carl Welch is a person who has been aggrieved by Defendants' actions. At all relevant times he has been a resident of the state of Texas.

6.  At all relevant times, Plaintiff was Defendants' employee and therefore is covered by Title VII and the Texas Labor Code.

7.  The acts of discrimination occurred in De Leon, Texas.

8.  Defendant CSNHC is the parent company of Defendant De Leon Nursing & Rehabilitation. Defendant CSNHC operates approximately one hundred and thirty (130) long-term care communities throughout Texas, and is headquartered at 4150 International Plaza, Suite 600, Fort Worth, Texas 76109.

9.  CSNHC employs over five hundred (500) employees. During all relevant times, CSNHC has been an employer covered by Title VII and the Texas Labor Code.

**ORIGINAL COMPLAINT**

10. CSNHC transacted and continues to transact business in Texas by, among other things, employing persons within Texas and within this judicial district.

11. Defendant DeLeon Nursing & Rehabilitation LP is a subsidiary company of Defendant CNSHC. DeLeon is a senior living community and healthcare facility located at 809 E. Navarro Avenue, De Leon, Texas 76444.

12. DeLeon employs over fifty employees. During all relevant times, DeLeon has been an employer covered by Title VII and the Texas Labor Code.

13. DeLeon transacted and continues to transact business in Texas by, among other things, employing persons within Texas and within this judicial district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

14. Plaintiff timely filed a Charge of Discrimination with the EEOC.

15. Plaintiff received his Notice of Right to Sue letter from the EEOC within ninety days prior to the filing this Complaint.

## STATEMENT OF FACTS

16. Between approximately May 20, 2020 and August 2, 2021, Mr. Welch worked for Defendants at the DeLeon Nursing & Rehabilitation community in De Leon, Texas. Mr. Welch was a Maintenance Supervisor for Defendants at the time of his retaliatory termination on or around August 2, 2021. During his employment, Mr. Welch was subjected to retaliation for engaging in protected activity after reporting incidents of workplace harassment and discrimination against a subordinate employee based on the employee's sexual orientation, which was committed or otherwise perpetuated by several of Defendants' management-level employees.

17. Toby Cloud, who identifies as gay, was Mr. Welch's subordinate at the time of the harassment.

18. Mr. Welch frequently observed Mr. Cloud being the butt of jokes among colleagues due to his sexual orientation. This frequently occurred during the daily morning supervisor meetings. For example, Mr. Welch was included in a group chat that included the Administrator, Starla Dyson; the Business Manager, Kay Lynn Porter; the Head Nurse, Julia Leal; the Housekeeping Supervisor, Yvette Montanez; and several other supervisors. In the middle of one their morning supervisor meeting, someone mentioned that Mr. Cloud pants sagging and his underwear was showing. In response, another supervisor said in the group text: "At least he's wearing some," in reference to Mr. Cloud's underwear. In response to this comment, Ms. Montanez said: "At least it's not a thong." Ms. Dyson's response was to laugh at the comments.

19. In another morning supervisor meeting, Mr. Welch witnessed the supervisors participate in another discriminatory exchange about Mr. Cloud. When Ms. Marquez asked whether Mr. Cloud was available to schedule as a door greeter, Ms. Dyson responded that Mr. Cloud had already informed her that he was unavailable because he was going to meet his boyfriend, who was a carnival employee. As she explained this, Ms. Dyson used a mocking tone and made stereotypical "gay" hand gestures intended to mock Mr. Cloud based on his sexual orientation. As she did so, all of the other supervisors laughed.

20. The discriminatory incident that ultimately led to Mr. Welch's retaliatory termination occurred on or around July 2, 2021. On that date, Mr. Welch and Mr. Cloud were cleaning a storage shed at the DeLeon facility along with Defendants' management-level employees, including Director of Human Resources (HR), Betty Marquez; Activities Director, Olivia Amaya; and Yvette Montanez.

21. As Mr. Welch and Mr. Cloud were removing items from the shed, Ms. Amaya asked Mr. Welch, "Can you get out a fag pole?" Confused, Mr. Welch responded: "What's a fag

**ORIGINAL COMPLAINT**

pole?" Hearing this discussion, Ms. Marquez came out from the shed and interjected: "Toby needs a fag pole because he's a faggot." Ms. Amaya laughed at Ms. Marquez's comment, then asked Mr. Cloud if he needed a "fag pole." Ms. Marquez interjected again, telling Ms. Amaya: "Yes because he's a faggot." Mr. Cloud clearly seemed upset by these comments. Despite this, Ms. Montanez, Mr. Cloud's direct supervisor, was laughing.

22. After witnessing this discriminatory exchange, Mr. Welch immediately removed himself from the situation.

23. Mr. Cloud caught up to Mr. Welch a few minutes later in the "Hopper" room. He asked Mr. Welch for help identifying the person to whom Mr. Cloud should report the homophobic harassment he had just experienced from Defendants' management-level employees.

24. Mr. Welch told Mr. Cloud that he was not sure in this instance because normally, employee reports of workplace harassment should be directed to an employee's Human Resources Coordinator (HRC); however, Mr. Welch's HRC was Ms. Marquez, who was among the employees harassing Mr. Cloud. Mr. Cloud also could not report to his direct supervisor, Housekeeping Supervisor Montanez, because she had witnessed the harassment Ms. had done nothing to stop or remedy it when it occurred.

25. Immediately after this discussion, just after Mr. Cloud left the Hopper room, Ms. Leal entered the room. Like Mr. Welch, Ms. Leal worked in a supervisory capacity as a Head Nurse in her department. Mr. Welch immediately reported the harassment to Ms. Leal and inquired as to who she thought might be any other appropriate point of contact for Mr. Cloud's report against Defendants' HR Director and other management staff. Ms. Leal's response was "that's too much drama" and instructed Mr. Welch to stay out of it.

26.     Not long after his report to Ms. Leal, Mr. Welch reported the harassment to Director of Therapy John Yoder. Explaining that he had already spoken about the harassment to Ms. Leal, Mr. Welch asked Mr. Yoder for advice on what further action he should take in response to the discrimination against Mr. Cloud. Mr. Yoder asked, "What did Julie say about it?" Mr. Welch told him she instructed Mr. Welch to stay out of it. Mr. Yoder responded: "That's what I'm telling you," and to "stay the hell out of it."

27.     On or around July 25, 2021, Mr. Cloud again reached out to Mr. Welch for help regarding his complaint of discrimination. . Mr. Welch told Mr. Cloud that he would talk to Dietary Supervisor Andrea Wiggins in the morning, explaining that she might be able to help because her mother worked at CSNHC's corporate office.

28.     The next morning, on July 26, 2021, Mr. Welch again reported the discrimination against Mr. Cloud during the July 2 incident to Ms. Wiggins. Ms. Wiggins told Mr. Welch to instruct Mr. Cloud to call her, assuring Mr. Welch that she would take it from there and would take on the responsibility of making sure Mr. Cloud was able to speak to somebody in Defendants' corporate Human Resources department. Ms. Wiggins told Mr. Welch that she was on her way to a meeting with Ms. Marquez and Administrator Starla Dyson. She asked Mr. Welch if she could bring it up in the meeting, and Mr. Welch responded yes. After talking to Ms. Wiggins, Mr. Welch immediately called Mr. Cloud and told to him to call Ms. Wiggins.

29.     On or around July 26, 2021, Ms. Wiggins communicated Mr. Cloud's workplace complaint to Administrator Dyson. Ms. Marquez was also in attendance at this meeting. In reply, Ms. Dyson stated that it would be Mr. Cloud's word against Ms. Marquez's. Ms. Wiggins then informed Ms. Dyson that there were multiple witnesses to the harassment. Ms. Wiggins further

**ORIGINAL COMPLAINT**

informed Ms. Dyson that Mr. Welch wanted to speak to somebody at Defendants' corporate office regarding the complaint.

30. On July 26, 2021, at Administrator Dyson's request, Ms. Montanez provided a written statement to Defendants. In her statement, she intentionally lied and reported that on July 2: Ms. Amaya mentioned needing a "flag" pole — and that *Mr. Welch* then asked Mr. Cloud if he needed a "fag" pole. Ms. Montanez knew this was not true.

31. On July 26, 2021, Mr. Welch received a text inadvertently sent to him by Office Manager Kalynn Porter stating: "Shit is going down the email just came from corporate." When Mr. Welch asked what she meant, Ms. Porter quickly responded that she had not meant to send the first text to Mr. Welch, but rather had intended to send the text to *Christy* Welch—another employee at the facility.

32. Later that night, Administrator Dyson called Mr. Welch and informed him that he was suspended. Ms. Dyson told Mr. Welch the suspension was for not telling any other supervisor or HR employee about Mr. Cloud's harassment complaint. Protesting this allegation, Mr. Welch told Ms. Dyson that in addition to Ms. Wiggins, he had also reported Mr. Cloud's complaint to John Yoder and Julia Leal. Ms. Dyson responded saying, "Well I guess Julie [Leal] and John [Yoder] are now involved. I don't know what corporate is going to do." Nevertheless, Ms. Dyson did not revoke the suspension issued to Mr. Welch pursuant to her false accusation that Mr. Welch had not told anyone about the harassment.

33. Upon information and belief, Ms. Dyson instructed Ms. Leal that if Corporate or anyone else asked, she should tell them that Mr. Welch never reported the harassment to her.

34. On or around July 27, 2021, Corporate sent a representative to the De Leon facility to investigate the harassment complaint based on Mr. Cloud and Mr. Welch's reports. On July 27,

2021, Ms. Dyson texted Mr. Welch asking him to provide his statement regarding the July 2 incident. Mr. Welch responded that he did not feel comfortable giving his statement to her, saying that he wanted to provide his statement directly to the Corporate investigator.

35.     On or around July 28, 2021, Mr. Welch spoke with Corporate's investigator to provide his statement regarding the discrimination he had witnessed against Mr. Cloud. The investigator informed Mr. Welch that his was the last statement needed to conclude the investigation.

36.     After Mr. Welch made his statement, the CSNHC investigator assured Mr. Welch that he had followed procedure. Indeed, she informed him that he had acted as they would want any employee to act in his situation, and even gone above and beyond in reporting the discrimination to three different members of management. Urging Mr. Welch not to worry it any further, she told him he would be paid for the days he was suspended, and to enjoy the days off.

37.     The next day, July 29, 2021, Administrator Dyson called Mr. Welch and told him that Corporate's investigation was concluded. She then informed Mr. Welch that Corporate instructed her to tell him he was being called back to work. On July 29 and 30, 2021, Mr. Welch returned to the facility and worked the remaining two weekdays as normal.

38.     On Monday morning, August 2, 2021, Ms. Dyson texted Mr. Welch with the instruction to come to her office. Ms. Dyson then explained that Mr. Welch needed to sign the paperwork she was handing him to receive his compensation for the two days Defendants had suspended him. Following Ms. Dyson's instruction, Mr. Welch signed the paperwork to receive the suspension pay.

39.     Ms. Dyson then told Mr. Welch he was terminated. She told him to hand over his keys, retrieve his belongings, and to leave the facility immediately.

40. Ms. Dyson did not further explain what had changed since July 28 to reverse Defendants' decision to allow him to return to work.

41. After Mr. Welch's termination, Mr. Welch asked Ms. Dyson to tell him why he had been terminated, which she refused to do. Mr. Welch also asked Ms. Dyson to provide him with his termination paperwork. Ms. Dyson again refused Mr. Welch's request, telling him that Corporate had refused to provide his termination paperwork. Mr. Welch also contacted Corporate's HR Office repeatedly with the request for his termination paperwork, which was refused.

42. Defendants withheld Mr. Welch's final paycheck and attempted to pay him with a gift card in lieu of his wages.

43. Shortly after this, Tracy LNU, the corporate supervisor for the Maintenance Department, called Mr. Welch. He said he heard what happened, and that he believed Defendants' decision to terminate Mr. Welch was unlawful. He told Mr. Welch to write another statement to Corporate HR, which Mr. Welch did. Defendants responded that they would not be changing their decision to discharge him.

44. Defendants' decision to terminate Mr. Welch was made in retaliation for Mr. Welch's protected activity. Due to Defendants' illegal retaliatory conduct against Mr. Welch, he has sustained damages, which he continues to suffer from to date.

## COUNT I
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
(Retaliation)**

45. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

46. Plaintiff reported discriminatory treatment based on an employee's sexual

**ORIGINAL COMPLAINT**

orientation to Defendants, thereby engaging in protected activity.

47. Defendants discharged Plaintiff in retaliation for engaging in protected activity.

48. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

49. Plaintiff's requests for relief are set forth below.

## COUNT II
### Tex. Lab. Code §§ 21.055.
### (Retaliation)

50. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

51. Plaintiff reported discriminatory treatment based on an employee's sexual orientation to Defendants, thereby engaging in protected activity.

52. Defendants discharged Plaintiff in retaliation for engaging in protected activity.

53. The conduct alleged herein violates Chapter 21 of the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001 *et seq.*

54. Plaintiff's requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and Chapter 21 of the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001 *et seq.*;

B. All damages that Plaintiff has sustained as a result of Defendants' conduct, including compensatory damages for emotional distress, humiliation, embarrassment, loss of enjoyment of life and mental anguish;

C. Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct;

D. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

E. Pre-judgment and post-judgment interest, as provided by law;

F. That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and are determined to be in full compliance with the law; and

G. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seek injunctive relief, including, but not limited to:

H. Training on the subject of employment discrimination for all of Defendants' employees;

I. Training of all employees regarding the law prohibiting discrimination based upon sexual orientation, including the reporting procedures for reporting such discrimination, conducted by reputable outside vendors;

J. Training of all employees regarding the law prohibiting retaliation for reporting discrimination.

K. Supervisory discipline up to and including termination for any employee who engages in unlawful discrimination, including sexual orientation discrimination.

L. Active monitoring of the work areas to ensure compliance with discrimination policies;

M. Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief; and

Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: January 31, 2024

Respectfully submitted,

**ELLWANGER HENDERSON LLLP**

*/s/Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Toby W. Costas
Texas State Bar No. 04855720
tcostas@equalrights.law
Madison R. Chilton
Texas State Bar No. 24132727
mchilton@equalrights.law
400 S. Zang Blvd.
Suite 600
Dallas, Texas 75208
Telephone: (469) 903-6005
Facsimile: (469)998-6775

**ATTORNEYS FOR PLAINTIFF**