UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| CARL WELCH,<br><br>    Plaintiff,<br><br>v.<br><br>CREATIVE SOLUTIONS IN<br>HEALTHCARE, INC., et al.,<br><br>    Defendants. | No. 1:24-CV-021-H |

**ORDER**

    Before the Court is the defendants' motion to dismiss the case and compel arbitration (Dkt. No. 8). Welch seeks to prevent enforcement of the arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (Act), which applies to sexual harassment disputes or claims that arose or accrued on or after March 3, 2022, and lets parties alleging such disputes render the agreement unenforceable in that case. Because Welch's claims arose before the Act's date of enactment, March 3, 2022, and he did not show or allege that the dispute arose on or after the date of enactment, the Court concludes that the provisions of the Act do not apply, and the arbitration agreement is otherwise enforceable. The Court grants the motion to compel arbitration and stays, but does not dismiss, the case.

1. **Factual and Procedural Background**

    A.    **Procedural History**

    Welch filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and "received his Notice of Right to Sue letter from the EEOC." Dkt. No. 1 at 3. He then filed suit on January 31, 2024. Dkt. No. 1. He alleged that the defendants retaliated against him in violation of Title VII and the Texas Labor Code. *Id.* at

9–10. He seeks a declaratory judgment, damages, attorneys' fees, and injunctive relief. *Id.* at 10–13.

    **B.**    **Factual Allegations**[1]

Creative Solutions in Healthcare, Inc. is the parent company of De Leon I Enterprises, LLC, doing business as De Leon Nursing and Rehabilitation LP. Dkt. No. 1 at 2–3; Dkt. No. 8 at 1. Welch worked for the defendants as a maintenance supervisor. Dkt. No. 1 at 3. Cloud was his subordinate and is openly homosexual. *Id.* Colleagues of Welch and Cloud frequently made jokes regarding Cloud's sexual orientation. *Id.* at 4. One instance of such comments occurred around July 2021, when multiple coworkers commented on Cloud's sexual orientation and used an epithet in the conversation. *Id.* at 4–5. The comments upset Cloud, who left the group that was making the comments and went to Welch. *Id.* at 5. Cloud wanted to report the incident, but Welch was unsure as to whom to report the incident, as the director of human resources was part of the offending group. *Id.* Welch ended up asking the head nurse to whom he should elevate Cloud's report. *Id.* The head nurse cautioned Welch against elevating Cloud's complaint. *Id.* Welch reached out to the director of therapy, who provided similar caution. *Id.* at 6.

    Later that month, Cloud followed up with Welch regarding the complaint. *Id.* Welch reported the incident to the dietary supervisor, who reported it to an administrator. *Id.* The same day, the administrator informed Welch that he was suspended. *Id.* at 7. The administrator alleged that Welch failed to tell another supervisor or a member of human resources about Cloud's complaint when he first heard of it. *Id.* After corporate officials

---

[1] Since the Act applies to those "alleging conduct constituting a sexual harassment dispute," 9 U.S.C. § 402(a), the Court treats the allegations as true for the purpose of this analysis.

investigated the complaint, they directed that Welch return to work and receive pay for the days that he did not work as the result of the suspension. *Id.* at 8. Welch returned to work for two days, but on August 2, 2021, the administrator informed Welch that he had been terminated. *Id.*

When he began working for the defendants, Welch signed an arbitration agreement. Dkt. No. 8 at 8–12. The agreement stated that the parties were bound to arbitrate lawsuits, claims, issues, and disputes of an employee, including "claims for retaliation for . . . exercising any rights under a statute." *Id.* at 10.

### C. Pending Motions

Creative Solutions and the De Leon entities moved to compel arbitration and dismiss this case under Federal Rule of Civil Procedure 12(b)(1) or (3). *See* Dkt. No. 8. Welch responded, seeking to prevent under the Act the arbitration agreement from applying. Dkt. No. 10. Welch filed this response on April 23, 2024. *Id.* The deadline for the defendants to reply has passed, so this motion is ripe.

## 2. Legal Standards

### A. Compelling Arbitration Generally

Federal law provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract[] . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. Further, a party brought into federal court despite such a contract may move "for an order directing that . . . arbitration proceed in the manner provided for in [the] agreement." *Id.* § 4.

The Federal Arbitration Act (FAA) puts arbitration agreements on an equal footing with other contracts. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Accordingly, courts must enforce arbitration agreements according to their terms unless state-law grounds for revocation of any contract apply to the arbitration provision or an exception in the FAA applies. *Id.*

> B. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. § 401–02), provides that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case [that] relates to the sexual assault dispute or the sexual harassment dispute." *Id.* § 2(a). The Court, not the arbiter, decides the "validity and enforceability of an agreement to which this chapter applies." 9 U.S.C. § 402(b). A "sexual harassment dispute" means "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). The Act applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act"— March 3, 2022. Pub. L. No. 117-90 § 3.

The Act does not define the words "dispute," "claim," "arises," or "accrues." The Court therefore gives these terms their ordinary meanings at the time of enactment. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012); *Famuyide v. Chipotle Mex. Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024), *reh'g denied* No. 23-3201, 2024 WL 4274496, at *1 (8th Cir. Sept. 24, 2024) (applying the ordinary-meaning canon to the Act). A dispute in a legal context like this one is a "conflict or controversy, esp. one that has given rise to a

particular lawsuit." *Famuyide*, 111 F.4th at 898 (quoting *Dispute*, Black's Law Dictionary (11th ed. 2019)). Contemporaneous laymens' dictionaries similarly define the term. *See, e.g.*, *Dispute*, Merriam Webster's Collegiate Dictionary 362 (11th ed. 2014) (defining dispute as "a verbal controversy"). A claim is a "demand for money, property, or a legal remedy to which one asserts a right; esp. the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, Black's Law Dictionary (11th ed. 2019); *see also Claim*, Merriam Webster's Collegiate Dictionary 227 (11th ed. 2014) (defining claim as "a demand for something due or believed to be due"). Because the phrases "claim" and "claim accrual" have well-known legal and common-law meanings, the Court presumes that Congress used those phrases with such meanings in mind and applies the ordinary rules of claim accrual. *See Johnson v. United States*, 59 U.S. 133, 139 (2010).

### 3.  Analysis

#### A.  Welch fails to show that the Act applies to his claims.

It is Welch's burden to prove an exemption to avoid arbitration. *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022). Welch points only to the Act. Dkt. No. 10 at 5–6. The Act applies to disputes or claims that arose or accrued on or after March 3, 2022. 136 Stat. at 28. Welch must therefore show that either a claim accrued on or after the date of enactment, or the dispute did not arise until on or after the date of enactment. *Id.*; *Famuyide*, 111 F.4th at 898. Welch has shown or alleged neither, so he is not entitled to void the agreement as it applies to this case under 9 U.S.C. § 402(a).

##### i.  Welch's claims accrued before the date of enactment.

Welch's retaliation claims arose before the date of enactment. Generally, a claim accrues when "the plaintiff has a complete and present cause of action." *Green v. Brennan*,

578 U.S. 547, 553 (2016) (quoting *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 418 (2005)).  A retaliation claim has three elements:[2] "(1) that the plaintiff engaged in [a protected activity], (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)); *Donaldson*, 495 S.W.3d at 441.  Element one occurred in late July 2021, when Welch reported the incident regarding Cloud.  Dkt. No. 1 at 6.  Element two occurred on August 2, 2021 at the latest, when the defendants terminated Welch.  *Id.* at 8.  Given that the third element is merely a causal link and not a separate event, the latest date on which Welch's claims accrued was August 2, 2021, before the date of enactment.

      ii.  **Welch has not shown or alleged that a dispute arose on or after the date of enactment.**

Welch does not address when the dispute arose between him and the defendants.  A dispute arises when there is a conflict or controversy; two opposing entities must stake out conflicting positions on a matter.  *Famuyide*, 111 F.4th at 898.  It is unclear when the dispute arose between Welch and his employers.  Welch does allege that "[s]hortly after" his termination, he wrote a statement to corporate human resources.  Dkt. No. 1 at 9.  It is unclear from the complaint what Welch said in that statement.  The corporate officials

---

[2] Because Welch raises a claim of retaliation under state law and federal courts dealing with causes of action under state law use state law to determine when a claim accrues, it may generally be necessary to determine whether the state claims accrued under state law for the purpose of applying the Act.  The Court finds it unnecessary to determine which source of law to use in this case, however, because a retaliation claim accrues at the same time under either source of law.  *See Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 441 (Tex. App.—Houston [1st dist.] 2016, pet denied); *Rivas v. Sw. Key Programs, Inc.*, 507 S.W.3d 777, 780 (Tex. App.—El Paso 2015, no pet.); Tex. Lab. Code § 21.055.

responded to the letter, saying that they would not change their decision to discharge Welch. *Id.* Without knowing the content of Welch's statement, it is impossible to know whether this incident constitutes a qualifying dispute. The Court also knows that Welch filed a complaint with the EEOC but does not know when this occurred or whether the defendants registered disagreement as part of that process. *See id.* at 3. Welch has therefore failed to show or even allege specific facts to support a conclusion that the qualifying dispute did not arise before the date of enactment. Since Welch cannot show that the Act applies, he cannot show an exception to arbitration. *See Lopez*, 47 F.4th at 431.

      B.     **The arbitration agreement is valid and enforceable.**

The arbitration agreement between Welch and the defendants is valid and enforceable. There are two steps to resolving disputes under the FAA regarding the enforcement of arbitration agreements. *Amberson v. McAllen* (*In re Amberson*), 54 F.4th 240, 261 (5th Cir. 2022). The first step is for the Court "to decide if there is a valid, enforceable arbitration agreement." *Id.* A valid arbitration agreement exists here. Welch signed an agreement that exhaustively lays out terms explaining that employment grievances are subject to mandatory, binding arbitration. Dkt. No. 8 at 9–12. Welch does not dispute the authenticity of this document or his signature, and he also does not suggest that the agreement was not knowing or voluntary. *See* Dkt. No. 10. Where there is an arbitration agreement, the party seeking to prevent enforcement of that agreement must "identify an exemption to avoid arbitration." *Lopez*, 47 F.4th at 431. Welch points to the Act as his only source of exemption. *See* Dkt. No. 10. Since the Act's exemptions do not apply in Welch's case, there is no basis to avoid arbitration. The arbitration agreement is thus valid. Since

the arbitration agreement applies to retaliation claims, Dkt. No. 8 at 10, Welch's claims are subject to this agreement.

**4.     Conclusion**

In conclusion, the Court grants the motion in part. It is ordered that the parties shall submit this lawsuit to arbitration. It is further ordered that the lawsuit is stayed pending the arbitration. Lastly, the parties shall file a joint status report within 14 days of the arbitration's conclusion. The Clerk of Court shall administratively close this case pending further notice. The Court denies the defendants' request to dismiss the case under Federal Rule of Civil Procedure 12(b)(1) or (3) because doing so is beyond the Court's power. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 473–74 (2024). All other pending motions are denied.

So ordered on November 12, 2024.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE